**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 14 CR 562 -2, 4 |
| v. | ) | |
| | ) | |
| | ) | |
| FRANCISCO NARVAEZ, and | ) | |
| MONTRAIL KEY | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

The government has moved in limine to admit certain evidence at trial pursuant to Federal Rule of Evidence 404(b). For the reasons discussed below, the government's motion is granted.

**BACKGROUND**

On January 8, 2015, the grand jury returned an indictment against Defendants Abelardo Dominguez, Francisco Narvaez, and Montrail Key. Count One of the Indictment charges Defendant Dominguez with knowingly and intentionally attempting to possess with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846. Count Two charges Defendant Narvaez with forcibly assaulting a federal agent with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 111(a) and 111(b). Count Three charges Defendant Key with forcibly assaulting a federal agent with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 111(a) and 111(b). The indictment also contains forfeiture allegations against Defendant Dominguez.

1

The government has proffered that its evidence will show that in October 2014, Defendant Dominguez had discussions with a Drug Enforcement Agency ("DEA") undercover agent ("UC") regarding the purchase of approximately 10 pounds of methamphetamine. Law enforcement recorded these conversations. On October 3, 2014, the UC met Dominguez in Oak Lawn, Illinois and Dominguez told the UC that he wanted to purchase the methamphetamine from him. Dominguez told him, "Let me make a call for the papers and see if he wants to bring them." Dominguez then placed a call to a telephone subscribed to by Defendant Narvaez. During that call, Dominguez said: "Where are you at? Are the tacos there?" Dominguez told the UC that his associate did not want to bring the money then "because he is waiting on another person. Not all of them [the pounds of methamphetamine] are for one person." He then agreed to meet the UC later that day to finalize the details of the transaction.

On that same day, Dominguez and the UC had several additional recorded telephone conversations. During these conversations, Dominguez told the UC that he was waiting for his associates to get the money together to purchase the methamphetamine. He further told him that he currently had enough money to purchase three pounds of methamphetamine at the price of $15,000 per pound. Dominguez and the UC agreed to meet thereafter at a restaurant.

Narvaez subsequently drove Dominguez to the restaurant where Dominguez was meeting the UC. While Dominguez went into the restaurant, Narvaez remained in the truck. Defendant Key trailed the truck into the parking lot in a Chevrolet Malibu with Individual A in the passenger's seat of the Malibu. Key parked the Malibu near the truck in the parking lot. Individual A then exited the Malibu carrying a draw-string bag containing $30,000 in cash, entered the rear of the truck, and handed the bag with the cash to Narvaez.

In the meantime, Dominguez and the UC remained inside the restaurant discussing the transaction. Dominguez told the UC that he only had part of the money, and asked the UC to wait after the transaction so that Dominguez could return with more money to purchase the remainder of the methamphetamine. Dominguez said, "Yes, I'm parked in the back, but he's going to want more, wait for me another hour, yes, and I'll return with the rest." The UC told Dominguez that he had four pounds of methamphetamine waiting in a cooler. Dominguez told the UC, "I'm there in a Dodge truck, a grey truck." Dominguez also told the UC that the buy money was in the truck -- "It's there with my partner …. in a bag." The UC then told Dominguez that he wanted to see the money, and would then turn over the cooler of methamphetamine to Dominguez. The phone subscribed to by Narvaez then called Dominguez. During the call, Dominguez said "No, he's already here. Are you in the truck? I have this other guy with me and he wants to see the papers."

Dominguez and the UC then left the restaurant and walked over to the truck. Narvaez was still in the truck. When the UC opened the rear door to the truck, Narvaez passed the drawstring bag containing the $30,000 to the rear of the truck where the UC opened it and examined the money in front of Narvaez, Individual A, and Dominguez. The UC then called for the cooler to be brought over to the truck. After Dominguez looked at it, the cooler was loaded into the bed of the truck. While Dominguez went back into the restaurant, Narvaez drove the truck out of the parking lot. Individual A remained in the rear seat of the truck. In addition, Defendant Key followed Narvaez out of the parking lot in the Malibu. DEA agents executed a traffic stop on both vehicles about one black from the restaurant at a traffic light. DEA vehicles surrounded the truck and the Malibu on three sides. Approximately seven agents who were wearing bullet proof vests identified themselves as law enforcement, exited their vehicles, and commanded Key and

Narvaez to exit their vehicles. Narvaez did not abide by the command. Instead, he put the truck in reverse, bumping into the Malibu. Key jumped the curb with the Malibu, drove around the truck and headed toward one agent. The Malibu pinned the agent to a pole and then swerved and proceeded in the direction of another DEA agent. Narvaez, driving the truck, followed the Malibu up onto the curb and headed directly toward the agent. The other agents fired shots at Defendants Key and Narvaez in order to prevent them from running over the agents.

Both Key and Narvaez escaped the scene and led the officers on a high speed chase. Local law enforcement ultimately pulled Key over and arrested him. Narvaez had pulled the truck over and fled on foot. Agents found him hiding in a nearby apartment building. In the same stairwell where he was hiding, agents found an additional $5,000 in cash.

The government moves the Court to introduce evidence of the drug transaction with which Defendant Dominguez is charged in Count One against Narvaez and Key. Neither Narvaez nor Key is charged with the drug transaction in Count One. Specifically, the government seeks to introduce this drug transaction evidence pursuant to Rule 404(b) to prove Defendant Narvaez's and Defendant Key's motive to assault the officers as charged in Counts Two and Three. Defendant Key does not object to the introduction of this evidence pursuant to Rule 404(b). Defendant Narvaez, however, objects to its admission pursuant to Federal Rule of Evidence 403.

**LEGAL STANDARD**

Trial courts have broad discretion in ruling on evidentiary issues before trial. *See Jenkins v. Chrysler Motors Corp.,* 316 F.3d 663, 664 (7th Cir. 2002); *United States v. Lillie,* No. 08 CR 717, 2009 WL 3518157, at *1 (N.D. Ill. Oct. 28, 2009). "Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial." *Perry v. City of Chicago*,

733 F.3d 248, 252 (7th Cir. 2013). Accordingly, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). An *in limine* ruling avoids delays and allows the parties an opportunity to prepare themselves and witnesses for the introduction or exclusion of the evidence at issue. *See Wilson v. Williams,* 182 F.3d 562, 566 (7th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997) ("The prudent use of the *in limine* motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury"); *United States v. Connelly,* 874 F.2d 412, 416 (7th Cir. 1989). Ultimately, an *in limine* motion "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson,* 115 F.3d at 440.

## ANALYSIS

The government seeks to introduce the drug transaction evidence against Defendant Narvaez pursuant to Rule 404(b). "Rule 404(b) prohibits evidence of a defendant's other crimes, wrongs, or acts as proof of his propensity to commit the charged offense, but allows such evidence for other purposes, including (but not limited to) motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *United States v. Lee*, 724 F.3d 968, 975 (7th Cir. 2013) (citing Fed. R. Evid. 404(b)). "Rule 404(b) is not just concerned with the ultimate conclusion, but also with the chain of reasoning that supports the non-propensity purpose for admitting the evidence." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (*en banc*) (citing *United States v. Reed*, 744 F.3d 519, 524-25 (7th Cir. 2014)).

"In other words, the rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Gomez*, 763 F.3d at 856. "[T]he district court should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id*. Further, if the proponent of the evidence "can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great." *Id*. at 860. "The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Id*.

Specifically, the government seeks to introduce evidence of the drug transaction to show Defendant Narvaez's motive for forcibly assaulting federal agents as charged in Count Two and Defendant Key's motive for forcibly assaulting federal agents as charged in Count Three. As noted above, Defendant Key does not object to the introduction of this evidence for such a purpose.

**I.      The Drug Transaction Evidence is Directly Relevant to Defendant's Motive**

The evidence of the methamphetamine transaction is directly relevant to an issue at trial -- Defendant's motive for assaulting the federal agents. In order to convict Defendant Narvaez of forcibly assaulting a federal agent with a deadly or dangerous weapon, the government must prove that Defendant: 1) forcibly 2) assaulted, resisted, opposed, impeded, intimidated, or interfered with 3) a federal officer 4) in the performance of his duties, and 5) used a deadly and dangerous weapon in the commission of such acts. 18 U.S.C. §§ 111(a) & 111(b). *See United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006). *See also United States v. Siler*, 734 F.3d

1290, 1295-97 (11th Cir. 2013). Subsection (b) of Section 111 provides for an enhanced penalty if the defendant "uses a deadly or dangerous weapon" or "inflicts bodily injury". 18 U.S.C. § 111(b).

The Seventh Circuit in *United States v. Woody,* 55 F.3d 1257 (7th Cir. 1995), held that Section 111 is a general intent, not specific intent, crime. In order to establish a violation of Section 111, the government has to prove that the defendant "intended to commit a forcible assault." *Id.* at 1265–66. *See also United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir. 1998). The government can prove general intent by establishing that the defendant acted with knowledge of his conduct. *See United States v. Graham*, 431 F.3d 585, 590 (7th Cir. 2005); *Woody,* 55 F.3d at 1265-66.

Here, the government can establish Defendant's intent to assault the DEA agents through, among other evidence, motive. The government intends to argue that the methamphetamine transaction caused Defendant Narvaez to attempt to run the agents over because he did not want to be charged with the narcotics transaction. In other words, it was Defendant Narvaez's motive for the charged crime of forcibly assaulting a federal agent. This evidence of motive provides a "propensity-free chain of reasoning for its admission." *Gomez*, 763 F.3d at 869. Although Defendant Narvaez argues that the reason for his flight is irrelevant, the Court disagrees because it shows why he might be desperate enough to flee that he would intentionally injure a federal agent. Indeed, when the officers surrounded Narvaez, Narvaez did not comply with their directives but instead chose to flee in the truck that contained the cooler with the methamphetamines. In fleeing in the truck, he had to drive on the sidewalk and then aimed the vehicle at the agents.

In *United States v. Schmitt*, 770 F.3d 524 (7th Cir. 2014), the Seventh Circuit addressed a similar issue regarding the admissibility of motive evidence pursuant to Rule 404(b). In *Schmitt*, the defendant was charged with being a felon in possession of a firearm. Law enforcement agents had seized the firearm from Schmitt's residence where they also found drugs and evidence of drug dealing. The Seventh Circuit held that admission of the drug evidence was relevant to establish the defendant's motive for possessing the firearm. "The testimony that Schmitt was a drug dealer and that drugs were found in his home when he was arrested was relevant to suggest to the jury why he would have a firearm." *Schmitt*, 770 F.3d at 534. As such, the district court properly admitted it to establish the defendant's motive.

Defendant Narvaez contends that he is willing to introduce an alternative motive for his flight—the existence of state arrest warrants for his arrest. While this evidence would provide some explanation for his flight and attempt to run over the federal agents, as the government notes, it provides much less of a motive than a narcotics deal immediately prior to law enforcement stopping him with a cooler full of methamphetamines. Moreover, his evidence would place the government agents in a difficult position when testifying at trial because they did not pull him over because of his state arrest warrants.

## II. Rule 403 Does Not Preclude the Admission of the Evidence

The Court turns to the next question – "whether the probative value of the [motive] evidence is substantially outweighed by the risk of unfair prejudice." *Gomez*, 763 at 860. If so, the Court "may exclude the evidence under Rule 403 if the risk is too great." *Id*. "The more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (quoting *United States v. Vargas*, 552 F.3d 550, 557

(7th Cir. 2008)). Rule 403 excludes "other-act evidence that may be slightly probative through a non-propensity theory but has a high likelihood of creating unfair prejudice by leading a jury to draw conclusions based on propensity." *United States v. Chapman*, 765 F.3d 720, 726 (7th Cir. 2014) (quoting *Gomez*, 763 F.3d. at 857).

As discussed above, the probative value of the drug transaction evidence is significant given that it explains why Defendant would be willing to assault a federal officer in order to avoid getting caught with a cooler full of methamphetamines and charged with a federal violation for a drug transaction. The evidence is highly probative of why Defendant would assault a federal officer. *See Schmitt*, 770 F.3d at 535-36 (drug evidence highly probative of the defendant's motive and intent). Indeed, the drug evidence will help contextualize the crime and prove why Defendant Narvaez acted with knowledge of his forcible assault on the law enforcement officers. *See id*. The value of this evidence is not substantially outweighed by the risk of unfair prejudice. *See United States v. Eads*, 729 F.3d 769, 777 (7th Cir. 2013) ("Because all probative evidence is to some extent prejudicial, we have consistently emphasized that Rule 403 balancing turns on whether the prejudice is *unfair*") (quoting *United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011)). The Court will instruct the jury that Defendant Narvaez is not charged with the drug transaction and Defendant is free to make such an argument to the jury as well. Furthermore, the Court will give the jury a limiting instruction regarding the use of this evidence which will help "in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence." *United States v. Clark*, 774 F.3d 1108, 1116 (7th Cir. 2014). *See also Gomez*, 763 F.3d at 860-61. Accordingly, the Court grants the government's motion to admit this evidence.

### III. Defendant Narvaez's Request for Severance is Moot

Defendant Narvaez also requested severance of his trial from his co-Defendants if the Court excluded this motive evidence.  Given that the Court grants the government's motion, Defendant Narvaez's request for a severance is denied as moot.

## CONCLUSION

For the foregoing reasons, the government's motion in limine is granted.


**DATED:  June 29, 2015**

ENTERED

_____
AMY J. ST. EVE
U.S. District Court Judge