**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | Case No. 14 CR 562-2 |
| v. | ) | |
| | ) | Hon. Amy J. St. Eve |
| | ) | |
| FRANCISCO NARVAEZ | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Francisco Narvaez has moved for a judgment of acquittal or, in the alternative, a new trial on Count Two of the Indictment [143]. For the following reasons, the Court denies Defendant's motion.

## BACKGROUND

On January 8, 2015, a grand jury returned an indictment (the "Indictment") against Francisco Narvaez ("Defendant") and his co-defendants Abelardo Dominguez ("Dominguez") and Montrail Key ("Key"). Specifically, Count Two of the Indictment charged Defendant with forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with a person designated in Title 18, U.S.C. § 1114, namely Agent Two, who was a Special Agent of the Drug Enforcement Agency (the "DEA"), while he was engaged in the performance of his official duties, and in the commission of such acts used a deadly and dangerous weapon, in violation of 18 U.S.C. §§ 111(a) & (b). (R. 53.)

Defendant pled not guilty to Count Two. Subsequently, Defendant proceeded to a two-day jury trial. (R. 132, R. 136.) During the trial, the government called the following witnesses: DEA Task Force Officer Daniel Soria, DEA Task Force Officer Stano Domma, Oak Lawn

Police Department Officer Scannell, DEA Special Agent Christopher O'Reilly, Terrence Link, DEA Task Force Officer Scott Musgrove, and DEA Special Agent Michael McClarence. Defendant called Jeanne Infelise and did not testify at trial.

The jury returned a verdict of guilty against Defendant on Count Two of the Indictment. Defendant now moves for a judgment of acquittal or new trial on Count Two, pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively.

## LEGAL STANDARD

### I.    Motion for Judgment of Acquittal – Rule 29

Federal Rule of Criminal Procedure Rule 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

"In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010); *see also United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015) ("We have referred to this standard as a nearly insurmountable hurdle[.]") (inner quotation marks omitted) (citation omitted); *United States v. Molton*, 743 F.3d 479, 483 (7th Cir. 2014); *United States v. Torres–Chavez*, 744 F.3d 988, 993 (7th Cir. 2014); *United States v. Jones*, 713 F.3d 336, 339-40 (7th Cir. 2013); *United States v. Berg,* 640 F.3d 239, 246 (7th Cir. 2011); *United States v. Dinga*, 609 F.3d 904, 907 (7th Cir. 2010); *United States v. Morris*, 576 F.3d 661, 665–66 (7th Cir. 2009). The reviewing court will view the "evidence in the light most favorable to the prosecution," and the defendant "'must convince' the court that, even in that light, 'no rational trier of fact could have found him guilty beyond a reasonable doubt.'" *Id*. (quoting *United States v. Moore*, 572

F.3d 334, 337 (7th Cir. 2009)); *see also United States v. Eller*, 670 F.3d 762, 765 (7th Cir. 2012); *United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010) (stating that the inquiry is "whether evidence exists from which any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt"). In other words, a court will "set aside a jury's guilty verdict only if 'the record contains no evidence, regardless of how it is weighed,' from which a jury could have returned a conviction." *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009) (quoting *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)); *see also Warren*, 593 F.3d at 546. It follows that under Rule 29, courts "do not reassess the weight of the evidence or second-guess the trier of fact's credibility determinations." *United States v. Arthur*, 582 F.3d 713, 717 (7th Cir. 2009); *see also United States v. Severson*, 569 F.3d 683, 688 (7th Cir. 2009). This strict standard is recognition that "[s]orting the facts and inferences is a task for the jury." *Warren*, 593 F.3d at 547. Indeed, the Seventh Circuit teaches that:

> [t]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Moore*, 572 F.3d at 337 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

## II. Motion for a New Trial – Rule 33

Rule 33 of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); *see also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012) (reviewing a district

3

court's order on a Rule 33 motion for abuse of discretion); *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005). "'[C]ourts have interpreted [Rule 33] to require a new trial in the interests of justice in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.'" *United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)), *overruled on other grounds*, 546 U.S. 12, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005).

"'A jury verdict in a criminal case is not to be overturned lightly,'" however, "'and therefore a Rule 33 motion is not to be granted lightly.'" *Eberhart*, 388 F.3d at 1048 (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)). The court "may grant a new trial if the jury's verdict is 'so contrary to the weight of the evidence that a new trial is required in the interest of justice.'" *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) ("The focus in a motion for a new trial is not on whether the testimony is so incredible that it should have been excluded. Rather, the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses."); *see also United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011). In other words, "[t]he court should grant a motion for a new trial only if the evidence 'preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (quoting *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989)); *see also Presbitero*, 569 F.3d at 706.

## ANALYSIS

### I. The Evidence was Sufficient to Sustain Defendant's Guilty Verdict

Defendant argues that the "government failed to prove [Defendant's] guilt of assaulting a federal agent with a deadly or dangerous weapon in violation of 18 U.S.C. [§§] 111(a) and (b) on

4

October 3, 2014, as alleged in [C]ount [T]wo (2) of the [I]ndictment beyond a reasonable doubt." (R. 143, Defendant's Motion for Acquittal or New Trial, at 2.) The Court disagrees. During the course of the trial, the evidence more than demonstrated that Defendant assaulted a DEA agent with a deadly or dangerous weapon while the federal agent was engaged in the performance of his official duties.

When viewed in the light most favorable to the government, the evidence for each element was exceptionally strong. To prove Defendant guilty of assault of a federal agent with a deadly weapon, as charged in Count Two, the government had to prove the following elements: 1) Defendant assaulted, resisted, opposed, intimidated, or interfered with an officer or employee of the United States or of any United States agency; 2) Defendant did so through force or violence; 3) the officer or employee was engaged in the performance of his official duties at the time; 4) Defendant intended to assault, resist, oppose, intimidate, or interfere with the officer or employee; 5) Defendant used a deadly or dangerous weapon in the commission of the offense; and 6) Defendant intended to use said weapon. *See* 18 U.S.C. §§ 111(a) & (b); *see also United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006); (R. 135, Jury Instructions, at 17–18.) In all, the government presented officer testimony, civilian testimony, and physical evidence that established each of these elements beyond a reasonable doubt.

### A. Element One

Both the testimonial and physical evidence established that Defendant assaulted, resisted, opposed, intimidated, or interfered with a federal officer. Agent O'Reilly, one of the DEA agents Defendant assaulted, provided reliable and credible testimony. Specifically, the DEA orchestrated a "reverse" methamphetamine transaction. Indeed, in the hours leading up to Defendant's October 3, 2014 arrest, a DEA undercover agent (the "UC") convinced Defendant's

co-defendant, Abelardo Dominguez, that the UC was going to deliver them up to ten pounds of methamphetamine. Mr. Dominguez then communicated the details to Defendant. A few hours later, DEA surveillance observed Defendant enter the restaurant parking lot in a silver Dodge truck where the sham deal would take place. Law enforcement subsequently saw Defendant, Mr. Dominguez, and their co-defendant, Montrail Key, exchange money with the UC for what they believed were four pounds of methamphetamine. In fact, it was a cooler full of a non-narcotic substance that simply resembled methamphetamine. After loading the sham drugs into the bed of Defendant's truck, Defendant pulled out of the restaurant parking lot. DEA surveillance videos and testimony corroborated this series of events.

DEA Agent O'Reilly and other agents followed Defendant's truck as he departed the restaurant with what he believed was cooler full of drugs. Agent O'Reilly testified that he observed Defendant's truck stopped at a street light, positioned north of a nearby light pole. He then described how he approached Defendant's vehicle, gun drawn, and initiated his arrest, instructing Defendant to exit the vehicle. Defendant, Agent O'Reilly testified, refused. Next, Agent O'Reilly explained that Defendant, instead of exiting the truck as instructed by Agent O'Reilly and other officers, drove over the curb and at Agent O'Reilly. Indeed, Agent O'Reilly testified that Defendant's truck "was coming right [him]," and he "jumped" out of the way. Ultimately, Defendant's truck came within "inches" of hitting Agent O'Reilly. Afterward, Defendant continued driving down the street and fled the scene. Further, Agent O'Reilly's testimony was corroborated by Agent McClarence and Officer Musgrove. Moreover, Terrence Link, a civilian witness with no stake in the matter, also corroborated Agent O'Reilly's testimony. Mr. Link observed Defendant's actions from where he was parked across the street and testified consistently with the agent's testimony. The physical evidence also helped establish

this element.  Indeed, the photographs from the crime scene showed black tire marks along the street curb located north of the light pole, consistent with a truck tire driving off the street and over the curb.

Additionally, Agents McClarence and O'Reilly testified that, after Defendant fled the scene, he then fought with the federal law enforcement officers.  Specifically, both agents testified that, after Defendant fled the arrest scene, the agents pursued Defendant, discovering him outside an apartment complex.  *See United States v. Russell*, 662 F.3d 831, 851 (7th Cir. 2011) ("Where a defendant flees in the immediate aftermath of a crime or shortly after he is accused of committing the crime, the inference that he is fleeing to escape capture and prosecution is strong.") (citing *United States v. Jackson*, 572 F.2d 636, 640–41 (7th Cir. 1978)).  Upon attempting to arrest him a second time, the agents explained that Defendant attacked Agent O'Reilly and brought both agents down a set of stairs.  The agents ultimately arrested Defendant, but only after this physical interaction.  In total, considering all of this evidence in the light most favorable to the government, a rational trier of fact could have found that Defendant assaulted, resisted, opposed, intimidated, *and* interfered with a federal officer.  Thus, the evidence sufficiently proved the first element of Count Two.

    **B.**    **Elements Two and Three**

Likewise, the government's evidence sufficiently supported the second and third elements.  Specifically, the government had to prove that Defendant committed the above acts through force or violence while the federal law enforcement officers were engaged in the performance of their official duties.  As described in more detail above, the agents' and Mr. Link's testimony illustrated that Defendant assaulted, resisted, opposed, intimidated, and interfered with Agent O'Reilly by driving his truck directly at him.  This act exemplifies force or

7

violence. Importantly, "an assault may be committed without actually touching, striking, or injuring the other person." *United States v. Watts*, 798 F.3d 650, 653 (7th Cir. 2015); *see also* (R. 135, Jury Instructions, at 19.) Accordingly, the fact that Defendant may not have actually struck Agent O'Reilly with his truck does not preclude a factfinder from concluding that Defendant assaulted Agent O'Reilly.

Moreover, according to the agents' testimony, Defendant committed these acts while the agents attempted to arrest him for his involvement in the drug transaction. As a result, the agents were performing their official duties as federal law enforcement officers. Thus, a rational trier of fact could reasonably conclude that the government proved the second and third elements beyond a reasonable doubt.

### C. Elements Four, Five, and Six

Finally, the evidence sufficiently demonstrated that the government proved the remaining elements beyond a reasonable doubt—that Defendant intended to commit the above acts, did so with a deadly or dangerous weapon, and intended to use said weapon. First, the Court instructed the jury that a "deadly or dangerous weapon" included "any object that has the potential or capability to endanger life or to inflict great bodily harm and is used by the defendant in a manner that has the potential or capability to endanger life or to inflict great bodily harm." (R. 135, Jury Instructions, at 20.) A reasonable jurist could conclude that a pick-up truck is capable of endangering a person's life or inflicting great bodily harm in light of the manner in which Defendant used it. *United States v. Arrington* is informative. There, the D.C. Circuit held that "for a car to qualify as a deadly weapon, the defendant must use it as a deadly weapon and not simply as a mode of transportation." 309 F.3d 40, 45 (D.C. Cir. 2002). The court further noted,

> [t]he Park Service officers testified that they reached into [the defendant's] car and grabbed the defendant around his upper body. At that point, [the defendant]

8

> reached down, put the gearshift into the drive position, and 'took off'—throwing two of the officers away from the car and dragging another for at least 50 feet through an intersection. Such testimony was sufficient for a reasonable juror to find that [the defendant] forcibly assaulted the officers, that he did so intentionally, that he used his car in the commission of that assault, that he used his car intentionally, and that he used the car as a deadly weapon. Nothing more is required to sustain a conviction for violating § 111(b).

*Arrington*, 309 F.3d at 49. Here, the agents' and Mr. Link's testimony was that Defendant attempted to hit Agent O'Reilly with his pick-up truck. Indeed, Agent O'Reilly instructed Defendant to exit his vehicle, and, instead, Defendant drove his truck at Agent O'Reilly, coming within "inches" of hitting him. Viewing the evidence in the light most favorable to the prosecution, there is no doubt that a reasonable juror could conclude that Defendant used a deadly or dangerous weapon in committing the assault charged in Count Two.

Second, the evidence illustrated Defendant's intent to commit the assault and use the deadly weapon. The DEA task force agents testified about Defendant's involvement in an October 3, 2014 reverse methamphetamine transaction. Described in further detail below, this evidence shed light on Defendant's motive. Indeed, the drug transaction evidence demonstrated that Defendant intended to avoid being arrested for a narcotics offense by attempting to run over the arresting agent and escape, rather than oblige commands to exit the vehicle. In other words, Defendant intended to commit the acts charged in Count Two using his pick-up truck. Therefore, the evidence supported elements four and six, respectively.

In sum, the evidence amply supported each of Count Two's elements beyond a reasonable doubt and, as a result, Defendant's guilty verdict. Accordingly, the record falls far from containing "no evidence . . . from which a jury could have returned a verdict." *Presbitero*, 569 F.3d at 704. Likewise, this plethora of evidence does not "preponderate heavily against the

9

verdict[.]" *Swan*, 486 F.3d at 266.  Thus, Defendant's motion seeking an acquittal and/or new trial under Rules 29 and 33, respectively, is denied.

**II.   Defendant Has Failed to Identify Any Errors that Require a Judgment of Acquittal or New Trial**

    **A.   Defendant's Evidence of the October 3, 2014 Reverse Methamphetamine Transaction was Admissible**

Defendant further argues that the Court erred when, "over defense objection[,] it granted the government's Motion in Limine allowing them to introduce evidence of the October 3, 2014 reverse Methamphetamine transaction pursuant to Fed. R. Evid. 404(b)."  (R. 143, Defendant's Motion for Acquittal or New Trial, at 1.)  The Court disagrees.  The drug transaction evidence was admissible under Federal Rules of Evidence 404(b).[1]

Federal Rule of Evidence 404(b) provides, in relevant part, the following:

(b) Crimes, Wrongs, or Other Acts.

    (1) *Prohibited Uses.*  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

    (2) *Permitted Uses.*  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1) & (2).

At the time of the Court's ruling, the government intended to use the October 3, 2014 reverse methamphetamine transaction evidence to illustrate Defendant's motive.  Section 111, as charged in Count Two, is a general intent crime, meaning the government simply had to prove that Defendant "intended to commit a forcible assault."  *United States v. Woody*, 55 F.3d 1257, 1265-66 (7th Cir. 1995).  To do so, the government used the reverse methamphetamine

---

[1] The Court issued a detailed ruling on this issue in advance of trial and incorporates its ruling herein.  (*See, generally,* R. 77, Memo. Op.)

transaction to highlight Defendant's alleged motive—to avoid being arrested and charged with the narcotics transaction. In other words, the drug transaction provided a reason why Defendant would intend to try running over Agent O'Reilly with his pick-up truck. Thus, the motive evidence provided a "propensity-free chain of reasoning for its admission," making the evidence admissible under Rule 404(b). *United States v Gomez*, 763 F.3d 845, 869 (7th Cir. 2014); *see also United States v. Schmitt*, 770 F.3d 524, 534 (7th Cir. 2014).

Further, Federal Rule of Evidence 403 did not preclude the admission of the drug transaction evidence. Rule 403 provides that

> [t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403; *see also Gomez*, 763 F.3d at 860. "The more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (citing *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008)). Rule 403 excludes "other-act evidence that may be slightly probative through a non-propensity theory but has a high likelihood of creating unfair prejudice by leading a jury to draw conclusions based on propensity." *United States v. Chapman*, 765 F.3d 720, 726 (7th Cir. 2014) (citing *Gomez*, 763 F.3d at 857).

Here, the drug transaction evidence was probative and not unfairly prejudicial. As described above, this evidence contextualized the charged crime, illustrating a potential motive as to why Defendant would intend to assault a federal law enforcement officer. Moreover, in light of the limiting instructions the Court issued to the jury, the evidence's probative nature was not substantially outweighed by the risk of unfair prejudice. *See United States v. Eads*, 729 F.3d

11

769, 777 (7th Cir. 2013) ("Because all probative evidence is to some extent prejudicial, we have consistently emphasized that Rule 403 balancing turns on whether the prejudice is *unfair*.") (citing *United States v. McKibbins* (7th Cir. 2011)) (emphasis in original). Specifically, the Court instructed the jury that

> [y]ou have heard testimony about an attempt to purchase methamphetamine that occurred prior to the assault on a federal law enforcement officer charged in the indictment. . . . If you decide that the attempted purchase took place and that Francisco Narvaez was aware of it, then you may consider that evidence to help you decide Francisco Narvaez's motive to commit the charged assault. You may not consider this evidence for any other purpose. To be more specific, you may not infer that, because Francisco Narvaez was aware of the attempted purchase of methamphetamine, he must have committed the assault on a federal law enforcement officer charged in the indictment. The reason is that Francisco Narvaez is on trial here for the specific charges of assault on a federal law enforcement officer. He is not on trial for the attempted purchase of methamphetamine. It is the government's burden to prove beyond a reasonable doubt the elements of the assault on a federal law enforcement officer charged in the indictment. The government cannot meet its burden by inviting you to infer that Francisco Narvaez is a person whose other acts suggest he had a bad character or a tendency to commit crimes.

(R. 135, Jury Instructions, at 14.) This limiting instruction helped "reduc[e] or elminat[e] any possible unfair prejudice from the introduction of [the] Rule 404(b) evidence." *United States v. Clark*, 774 F.3d 1108, 1116 (7th Cir. 2014). As a result, the October 3, 2014 drug transaction evidence was admissible under Rule 403. Thus, the Court did not err in granting the government's motion in limine.

### B. Defendant's "Theory of Defense" Jury Instruction was Improper

Defendant next contends that the Court erred when it rejected his proposed jury instruction number eight, a "theory of defense" instruction. Specifically, Defendant's proposed instruction provided as follows:

> It is Francisco Narvaez' theory of defense that he did not use or intend to use the pic-up truck as a deadly or dangerous weapon, but rather as a mode of transportation to effectuate his flight and escape.

12

Use of a vehicle merely as a mode of transportation to effectuate flight or escape does not constitute use of the pick-up truck as a deadly or dangerous weapon.

If you find that Francisco Narvaez used the pick-up truck merely as a means of flight to effectuate his escape, you should find him not guilty.

(R. 120, Defendant's Second Supplemental Proposed Jury Instructions, at 2; R. 143, Defendant's Motion for Acquittal or New Trial, at 1–2.)

As the Court noted in its February 2, 2016 ruling in open court, however, "'[d]efendants are not automatically entitled to any particular theory-of-defense jury instruction.'" *United States v. Cruse*, 805 F.3d 795, 814 (7th Cir. 2015) (quoting *United States v. Walker*, 746 F.3d 300, 307 (7th Cir. 2014)). Indeed,

> [a] defendant is only entitled to a jury instruction that encompasses [a] theory of defense if (1) the instruction represents an accurate statement of the law; (2) the instruction reflects a theory that is supported by the evidence; (3) the instruction reflects a theory which is not already part of the charge; and (4) the failure to include the instruction would deny the defendant a fair trial.

*Id.* (quoting *Walker*, 746 F.3d at 307) (internal quotation marks and alteration omitted).

Here, Defendant was not entitled to his proposed "theory of defense" instruction, as he failed to fulfill the first prong. Defendant's argument that Defendant must have intended to use the object specifically as a deadly or dangerous weapon, as opposed to simply as a means of escape, does not "represent[] an accurate statement of the law." *Id.* Again, *Arrington* is instructive. There, the D.C. Circuit concluded that

> [Defendant's] proposed ["intent to use the object as a weapon"] element is certainly not suggested by the language of § 111(b), which simply requires that the defendant "use" a deadly or dangerous weapon in the commission of the acts described in § 111(a). Nor is § 111(b) bereft of a *mens rea* requirement. Conviction requires both the intent to commit one of the acts specified in § 111(a), and the intent to use the object that constitutes the deadly weapon. Finally, such evidence of legislative intent as exists counsels against adding anything further. As the Supreme Court noted in *Feola*, Congress intended § 111 to protect federal officers to the maximum extent possible[.]

13

*Arrington*, 309 F.3d at 44 (citing *United States v. Feola*, 420 U.S. 671, 684, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1975)). As long as Defendant intended to use the weapon, Defendant could be found guilty. As a result, Defendant was not entitled to a "theory of defense" instruction, and its absence did not deny Defendant a fair trial.

In the alternative, if Defendant's instruction simply aimed to require the jury to find that Defendant intended to use the weapon generally, his request failed the third prong. Indeed, Defendant's theory was unnecessarily redundant in light of the elements the government had to prove under Count Two. (*See* R. 135, Jury Instructions, at 17.) The Court instructed the jury that the government had to prove that Defendant not only used a deadly or dangerous weapon in the commission of the charged assault, but that he also *intended* to use said weapon. Moreover, the "assault definition" jury instruction made clear that assault means to "*intentionally* attempt or threaten to inflict bodily injury upon another person with the apparent and present ability to cause such injury that creates in the victim a reasonable fear or apprehension of bodily harm." (R. 135, Jury Instructions, at 19, emphasis added.) As such, the instructions already captured Defendant's proposed theory. *See Arrington*, 309 F.3d at 44 (highlighting § 111(b)'s *mens rea* requirement).

Thus, the Court's refusal to give Defendant's "theory of defense" instruction was consistent with the law and the facts in the case. Accordingly, the Court did not err in its ruling.

## III. Defendant's Additional, Undeveloped Arguments Fail

Defendant lists four additional alleged errors that he claims require a judgment of acquittal or, in the alternative, a new trial. Specifically, Defendant asserts the following: 1) Defendant did not receive a fair and impartial trial, as guaranteed under the Fifth Amendment of the U.S. Constitution; 2) Defendant was denied due process of law, as guaranteed under the Fifth

Amendment; 3) Defendant was denied equal protection of law, as guaranteed under the Fifth Amendment; and 4) the Court erred in overruling Defendant's evidentiary objections and in sustaining the government's.

Defendant has not developed these arguments, failing to provide any analysis. Thus, Defendant has waived them. The Seventh Circuit has made clear that undeveloped and merely perfunctory arguments like this are waived. *See United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) (finding that arguments "without discussion or citation to pertinent legal authority" in opening brief were waived); *see also United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (finding the argument was "decidedly underdeveloped and therefore waived"); *United States v. Foster*, 652 F.3d 776, 792 (7th Cir. 2011) ("As we have said numerous times, undeveloped arguments are deemed waived[.]") (internal quotation marks and citation omitted); *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) ("Merely reciting the Rule 59(a) standard and then tossing the motion into the court's lap is not enough. Failure to adequately present an issue to the district court waives the issue on appeal."). As a result, Defendant has waived his four additional, undeveloped arguments, and the Court denies his motion for acquittal and/or a new trial on these undeveloped arguments.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's post-trial motions for acquittal and/or a new trial under Federal Rules of Criminal Procedure 29 and 33.


**DATED: May 16, 2016**              **ENTERED**

                                                                  _____
                                                                  AMY J. ST. EVE
                                                                  United States District Court Judge